**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 10 CR 673-1** |
| | ) | |
| **DANA BOSTIC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

MATTHEW F. KENNELLY, District Judge:

In February 2012, Dana Bostic pled guilty to conspiracy to possess heroin with intent to distribute.  The Court initially imposed a 456-month prison sentence.  After appeal and remand, the Court resentenced Bostic to 360 months of imprisonment.  In June 2024, Bostic moved for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i).  For the reasons below, the Court denies Bostic's motion.

**Background**

Dana Bostic operated a heroin distribution operation on the west side of Chicago that was affiliated with the New Breeds street gang.  In 2009, the Chicago Police Department and the Drug Enforcement Administration initiated an investigation into the gang.  Eight kilograms of heroin were seized.  The investigation established that Bostic obtained several hundred grams of heroin each week from his suppliers.  The heroin was diluted and packaged in stash houses, distributed to street sellers, and sold, with Bostic receiving daily proceeds ranging between $4,000 and $10,000.  In November

2010, a grand jury returned an indictment charging Bostic and thirteen others with drug-related offenses.  Bostic pled guilty to a charge of conspiracy to possess at least 1000 grams of heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. Bostic's plea declaration and the indictment stated that the offense conduct occurred from approximately 2008 until August 2010.

The Court originally calculated an advisory Sentencing Guidelines range of 360 months to life, with a criminal history category of II and an adjusted offense level of forty-two.  Among other enhancements, the Court included a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing drugs ("the stash house enhancement").  *See* U.S.S.G. § 2D1.1(b)(12).  The Court noted that although that enhancement took effect after Bostic committed the offense, the Seventh Circuit had held that the *Ex Post Facto* Clause did not apply to the Sentencing Guidelines.  The Court stated that it would consider the fairness of applying the enhancement in its application of 18 U.S.C. § 3553(a).  The Court also found that Bostic's organization was violent and that Bostic was implicated in murder and assault, including a retaliatory murder after an earlier shooting wounded Bostic and killed his brother.  Observing that the guidelines range did not fully capture Bostic's criminal conduct, the Court sentenced him to 456 months of imprisonment, or thirty-eight years.

After an intervening Supreme Court case invalidated the *ex post facto* application of a sentencing enhancement in a different case, the Seventh Circuit vacated Bostic's sentence and remanded his case for resentencing.  *See United States v. Adams*, 746 F.3d 734, 750 (7th Cir. 2014).  On remand, the Court incorporated many of its findings from the original sentencing hearing and explained that it had already accounted for the

2

*ex post facto* nature of the stash house enhancement in its analysis under section 3553(a). The Court recalculated Bostic's offense level and deducted four points: the two-point stash house enhancement and an additional two points in anticipation of Guidelines Amendment 782, which lowered the base offense levels for narcotics offenses. The recalculated offense level was thirty-eight. Bostic's criminal history category remained unchanged, and the revised advisory range was 262 to 327 months of imprisonment. The Court concluded once again that the full range of Bostic's conduct and participation in violence warranted an above-guidelines sentence and imposed a sentence of 360 months of imprisonment, or thirty years. The Seventh Circuit affirmed. *See United States v. Gill*, 824 F.3d 653, 666 (2016).

In 2017, Bostic moved to vacate his sentence under 28 U.S.C. § 2255(a), alleging ineffective assistance of counsel related to the calculation of his criminal history score and the application of a two-level firearms enhancement under U.S.S.G. § 2D1.1(b)(1). The Court denied the motion. *United States v. Bostic*, No. 17 C 1645, 2018 WL 439316 (N.D. Ill. Jan. 16, 2018). In 2020, Bostic filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241. He argued that his mandatory minimum was improperly enhanced from ten to twenty years under 21 U.S.C. § 851 based on an Illinois conviction for possession of a controlled substance. Bostic sought resentencing because the Seventh Circuit had declared that the Illinois drug possession statute could not serve as a predicate felony controlled substance offense due to its categorical overbreadth relative to federal law. A judge in the Central District of Illinois (where Bostic was incarcerated) dismissed the petition, as Bostic's sentence of thirty years far exceeded either the twenty-year mandatory minimum that applied at sentencing or the

3

ten-year mandatory minimum that would have applied had his argument succeeded, precluding him from establishing that there had been a miscarriage of justice. *See Bostic v. Warden, FCI Pekin*, 20-cv-1391, slip op. at 7 (C.D. Ill. Feb. 19, 2020).

## Discussion

The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, permits federal prisoners like Bostic to request a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) allows a sentence reduction when warranted by "extraordinary and compelling reasons" and consistent with relevant policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Thacker*, 4 F.4th 569, 573 (7th Cir. 2021). The Seventh Circuit has prescribed a two-step analysis for district courts. First, "the prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction." *Thacker*, 4 F.4th at 576. Second, "[u]pon a finding that the prisoner has supplied such a reason," a court "consider[s] any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner." *Id.*

A court considers the reasons for a sentence reduction both "individually and collectively." *United States v. Vaughn*, 62 F.4th 1071, 1073 (7th Cir. 2023). A reason that is independently insufficient may, as part of "a combination of factors," establish extraordinary and compelling circumstances. *Id.*

Section 3582(c)(1)(A) has an administrative exhaustion requirement, and the parties agree that Bostic has satisfied it.

## A. Change in law

Bostic's primary argument is based on U.S.S.G. § 1B1.13(b)(6), which is part of

4

the Sentencing Commission's policy statement on 18 U.S.C. § 3582(c)(1)(A).  Congress

delegated to the Commission the power to "describe what should be considered

extraordinary and compelling reasons for sentence reduction."  28 U.S.C. § 994(t).

Congress specified only that "[r]ehabilitation of the defendant alone" may not be an

extraordinary and compelling reason.  *Id.*  In section 1B1.13(b)(6), the Sentencing

Commission stated:

> If a defendant received an unusually long sentence and has served at
> least 10 years of the term of imprisonment, a change in the law (other than
> an amendment to the Guidelines Manual that has not been made
> retroactive) may be considered in determining whether the defendant
> presents an extraordinary and compelling reason, but only where such
> change would produce a gross disparity between the sentence being
> served and the sentence likely to be imposed at the time the motion is
> filed, and after full consideration of the defendant's individualized
> circumstances.

U.S.S.G. § 1B1.13(b)(6).  Bostic argues that this provision applies to him because he

has served about fifteen years of a thirty-year sentence.  He contends that he would

receive a considerably shorter sentence if sentenced today because of a change in the

law impacting his mandatory minimum sentence.

As Judge Shadid stated in his discussion of Bostic's section 2241 petition,

Bostic's prior Illinois conviction for possession of a controlled substance (in his case,

crack cocaine) under 720 Ill. Comp. Stat. 570/402(c) increased his mandatory minimum

sentence in the present case from ten to twenty years.  The Seventh Circuit later held

that the Illinois statute, which, unlike the federal Controlled Substance Act, includes

positional isomers in the definition of cocaine, *see* 720 Ill. Comp. Stat. 570/206(b)(4), is

categorically overbroad and cannot serve as predicate felony controlled substance

offense under 21 U.S.C. § 851.  *See United States v. Ruth*, 966 F.3d 642, 647 (7th Cir.

5

2020); *see also United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019) (holding

an Indiana statute overbroad for purposes of § 851 in its definition of

methamphetamine).  The government conceded in the section 2241 case that Bostic's

Illinois conviction is no longer a qualifying predicate federal drug offense.  *Bostic*, 20-cv-

1391, slip op. at 4–5.  Thus a ten-year mandatory minimum would apply to Bostic if

sentenced today.[1]  *See* 21 U.S.C. § 841(b)(1)(A)(i).

　　　Bostic has not shown, however, that the reduced mandatory minimum sentence

that would apply today would impact his sentence.  The Court did not sentence Bostic to

the mandatory minimum of twenty years.  Rather, when the Court resentenced Bostic, it

imposed a sentence of thirty years.  It's not just that the mandatory minimum did not

drive the Court's determination of Bostic's sentence; it did not impact his sentence at all.

The entire Guidelines range of 262 to 327 months was above the twenty-year floor that

the Court found applied, and Bostic's sentence, even when lowered on remand, was

thirty-three months above the top of the Guidelines range.  At the 2012 sentencing

hearing, the Court explained that "there is absolutely not a bit of doubt that [Bostic] was

running a drug dealing organization . . . for a very long period of time," dkt. 786,

---

[1] Since Bostic was sentenced, 21 U.S.C. § 841(b), which specifies the mandatory minimum sentence for his charge, has been revised.  Today, a fifteen-year mandatory minimum would apply to a defendant convicted under section 841(a) with a qualifying prior conviction for a predicate federal drug offense.  *Compare* 21 U.S.C. § 841(b) (2025) (establishing a fifteen-year mandatory minimum "after a prior conviction for a serious drug felony or serious violent felony has become final") *with* 21 U.S.C. § 841(b) (2010) (requiring a twenty-year mandatory minimum for the same prior conviction).  But as explained above, Bostic does not have a prior conviction for a predicate federal drug offense, so the ten-year mandatory minimum, which has not been modified since Bostic was sentenced, still applies.

Sentencing Tr. 290:18–290:22, and that conduct alone "would call for a sentence for Mr. Bostic significantly in excess of 20 years because 20 years just isn't enough to penalize somebody who was in charge of an organization like that for that kind of a time.  It just isn't."  *Id.* at 291:3–291:6.  The Court then noted evidence showing that Bostic "was involved in an organization that used violence from time to time to accomplish whatever goals it thought was appropriate at the time," *id.* at 296:17–296:20, and that Bostic has "reliably been shown to have engaged in violent acts himself."  *Id.* at 297:22–297:23; *see* dkt. 909, 30:1–30:20 (finding at resentencing that Bostic's drug enterprise involved violence and that he engaged in violence).  The Court imposed an above-Guidelines sentence in part because of Bostic's ties to this violent activity.  None of this was impacted in the least by the then-existing twenty-year floor, and it would not have been impacted if the floor had been only ten years.  For these reasons, Bostic has not shown that he would likely receive a shorter sentence today in light of the reduced mandatory minimum.

Even if Bostic would receive a lower sentence today because of the change in law, a non-retroactive change in law does not constitute an extraordinary and compelling circumstance under Section 3582(c)(1)(A).  *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022) ("There's nothing 'extraordinary' about new statutes or caselaw, or a contention that the sentencing judge erred in applying the Guidelines; these are the ordinary business of the legal system, and their consequences should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255.").  More specifically, the Seventh Circuit has repeatedly rejected arguments for extraordinary and compelling circumstances based on the change in the law made in *Ruth*.  *See id.* at 596; *Vaughn*,

62 F.4th at 1072 ("*Ruth* does not justify compassionate release as an indirect means to achieve retroactive application of that decision."); *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022) (*Ruth* "cannot alone constitute an 'extraordinary and compelling' reason authorizing a reduced sentence under § 3582(c)(1)(A)").

A district court must follow the Seventh Circuit's precedent when it conflicts with Section 1B1.13(b)(6). *United States v. Black*, 131 F.4th 542 (7th Cir. 2025), addressed whether a change in law made by the First Step Act, which the Seventh Circuit interpreted as non-retroactive, could serve as an extraordinary and compelling reason permitting compassionate release under Section 1B1.13(b)(6). The court concluded that "[w]hen Congress explicitly delegates to an agency the authority to interpret a statute, the agency's interpretation supersedes the court's unless the agency's interpretation exceeds the scope of authority that Congress explicitly delegated." *Black*, 131 F.4th at 546. The Commission's interpretation of the First Step Act exceeded its authority, the court found, because it was not "consistent with all pertinent provisions of any Federal statute." *Id.* (quoting 28 U.S.C. § 944(a)). But more broadly, the Seventh Circuit stated, its own precedents "directly interpreted" the compassionate release statute, and "[o]ur interpretation of extraordinary and compelling in the governing compassionate release statute . . . is lasting, not temporary." *Id.* at 547–48. *Black*, unlike the present case, concerned a federal statute that Congress had not made retroactive, but the court made clear that its reading of "extraordinary and compelling" in section 3582(c)(1) was definitive and does not encompass nonretroactive changes in

8

law.  In short, Bostic is not entitled to relief via U.S.S.G. § 1B1.13(b)(6).[2]

Bostic cites several cases from within the Seventh Circuit and represents that similarly situated defendants were granted sentence reductions because of changes in the law, but he is mistaken.  In *United States v. Freeman*, No. 09-CR-30033, 2023 WL 6973210 (C.D. Ill. Oct. 23, 2023), the court recognized an argument about a mandatory minimum under section 851 similar to Bostic's, but it did so in considering the sentencing factors under 18 U.S.C. § 3553(a), which a court considers only after the defendant has established extraordinary and compelling reasons (which, in *Freeman*, involved the defendant's health).  *Id.* at *4.  The court made clear that "changes in sentencing law cannot constitute an extraordinary and compelling reason supporting compassionate release[.]"  *Id.*  Nor did *United States v. Logan*, No. 07 CR 270-2, 2023 WL 2771165 (N.D. Ill. Apr. 4, 2023), involve a sentence reduction based on a change of law.  This Court reduced Logan's sentence based on the government's disavowal of fake stash house stings, strong evidence of rehabilitation, and "a decision by prosecutors, years after the fact, to offer favorable plea terms to nearly all similarly-situated defendants, but not to Logan and a handful of others by virtue of the fortuity that their cases were closed."  *Id.* at *5–6.  Bostic's circumstances are not at all like Logan's.

In sum, Bostic cannot rely on *Ruth* —a nonretroactive change in the law—as an

_____

[2] For a more fulsome discussion of *Black*, see *United States v. Tomkins*, No. 07 CR 227, 2025 WL 1042816, at *3–4 (N.D. Ill. Apr. 8, 2025) (Kennelly, J.) (concluding that, after *Black*, a nonretroactive change in law cannot be the basis for extraordinary and compelling circumstances in this circuit).

extraordinary and compelling reason permitting a sentence reduction.

**B.    Firearm enhancement, criminal history, and drug quantity**

Bostic makes a number of additional arguments related to the application of the Sentencing Guidelines in his case. But according to the Seventh Circuit, a "contention that the sentencing judge erred in applying the Guidelines" is not extraordinary within the meaning of section 3582(c)(1) and "should be addressed by direct appeal or collateral review under 28 U.S.C. § 2255." *King*, 40 F.4th at 595. Indeed, Bostic raised several of these arguments in his section 2255 petition, which the Court denied. The Court will nonetheless briefly address these arguments here.

The Sentencing Guidelines provide for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." U.S.S.G. § 2D1.1(b)(1). In a drug trafficking conspiracy, the offense conduct includes "all acts and omissions of others" that were (1) within the scope of the conspiracy, (2) in furtherance of the conspiracy, and (3) reasonably foreseeable in connection with the criminal activity in question "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *Id.* § 1B1.3(a)(1)(B). The enhancement applies "if a defendant *or his co-conspirators* possessed a firearm during the course of a drug offense." *United States v. Tanner*, 628 F.3d 890, 907 (7th Cir. 2010) (emphasis added). There was and is ample evidence that Bostic's co-conspirators possessed weapons during and in furtherance of the conspiracy, as (among other things) firearms were found in a search of a co-conspirator's residence and firearms were observed during the investigation. Use of firearms in the course of a large drug operation was, without question, reasonably

10

foreseeable to Bostic, who participated in intercepted phone calls that concerned the necessity of firearms. The firearm enhancement was appropriately applied and is not a proper basis for a sentence reduction.

Bostic makes several arguments related to the misdemeanor convictions that were considered in his criminal history calculation. The default rule is that sentences for misdemeanor offenses are considered in the criminal history score, except as specified in the Guidelines. *See* U.S.S.G. § 4A1.2(c). Bostic argues that his sentence to one year of probation for possession of narcotics should not have been considered under U.S.S.G. § 4A1.2(c)(1). That provision states that sentences for a list of misdemeanor and petty offenses are factored into criminal history only if the sentence imposed was a term of probation greater than one year or imprisonment or at least thirty days or the prior offense was similar to the instant offense. *Id.* But possession of narcotics is not one of the listed offenses, nor does it resemble the listed offenses. Thus a conviction for possession of narcotics is governed by the default rule that misdemeanor offenses are considered in determining the defendant's criminal history.

As in his section 2255 petition, Bostic contends that his conviction for criminal trespass to a vehicle was improperly considered because the sentence was imposed on December 12, 1998, over ten years before the sentencing date in this case. A sentence imposed more than ten years before the *commencement* of the instant offense is not considered in the criminal history calculation. U.S.S.G. § 4A1.1(c), Application Note 3 (emphasis added). In other words, the Guidelines focus on commencement of the instant offense, not the sentencing date. Bostic's plea declaration and indictment establish that the offense conduct commenced "in or about 2008", dkt. 546 at 2, dkt.

11

204 at 2, which was within ten years of his December 12, 1998 sentence, especially as the government maintained in its version of the offense included in the presentence report that Bostic was involved in heroin trafficking and sales as far back as 2000.

Bostic also argues that his conviction for criminal trespass to a vehicle should not have factored into his criminal history score because it was a misdemeanor offense similar to trespassing, one of the offenses listed in U.S.S.G. § 4A1.2(c)(1), and he was sentenced to only one year of probation. U.S.S.G. § 4A1.2(c)(1). If criminal trespass to a vehicle and trespassing are, in fact, "similar offenses" under section 4A1.2(c)(1), Bostic is correct that this sentence should not have factored into his criminal history. But even if the Court had not considered this conviction in calculating Bostic's criminal history score, he would have remained in Criminal History Category II, as Category I is reserved for defendants who have no more than a single criminal history point. *See* U.S.S.G., Ch. 5, Pt. A. Bostic's advisory Guidelines range thus would be unchanged.

Bostic also argues that the drug quantity in his case was overstated and based on "fuzzy math." Def.'s Mot. at 24. He states that the government never demonstrated that 1,000 grams or more of heroin "changed hands." *Id.* But the government is not required to show a particular transaction involving this quantity. Bostic was charged with a conspiracy spanning several years, and the government presented specific estimates of the quantity of heroin sold each day and week to reach its estimate that the conspiracy involved one kilogram of heroin *every thirty-six days*. And Bostic specifically agreed in his plea declaration "that the amount of narcotics involved in the conspiracy for which he is accountable is in excess of 1,000 grams of heroin." Dkt. 546 at 3. In

12

short, the drug quantity is not a basis for a sentence reduction.

In his discussion of the drug quantity, Bostic also cites a memorandum recommending that federal prosecutors decline to charge a drug quantity if it would trigger a mandatory minimum in certain cases. *Additional Department Policies Regarding Charging, Pleas, and Sentencing in Drug Cases*, Op. Att'y Gen. (Dec. 16, 2022). This policy creates no substantive rights, *id.* at 5 n.4, and Bostic probably would not satisfy the enumerated criteria for charging lower quantities to avoid mandatory minimums because he had ties to a violent street gang and a significant managerial role in the operation. *Id.* at 1–2. There is no basis for a sentence reduction based on speculation as to how Bostic would have been charged under this policy.

Finally, Bostic cites the combination of these factors. A combination of factors that are independently insufficient can provide an extraordinary and compelling reason permitting a sentence reduction, *Vaughn*, 62 F.4th at 1073, but the arguments presented here are insufficient even in the aggregate. Bostic also cites various perceived sentencing disparities: his co-defendants have been released or have completed their sentences, and he contends that his sentence is longer than the average federal murder or drug trafficking sentence. These sentencing disparities are not particularly compelling given his leadership role in a street gang, the large quantity of drugs involved in his offense, and the violence for which he was appropriately considered to be accountable. Nor do Bostic's objection to the drug quantity or the Court's consideration of violence in sentencing amount to extraordinary circumstances, even in combination.

If the Court found that Bostic had demonstrated an "extraordinary and

13

compelling" reason permitting a sentence reduction, it would proceed to analyze the section 3553(a) factors, but it need not do so here. The Court notes Bostic's highly positive engagement in programming and his significant efforts towards rehabilitation, but this does not warrant a sentence reduction absent other extraordinary and compelling reasons.

### Conclusion

For the foregoing reasons, the Court denies Dana Bostic's motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i) [dkt. no. 1200]. The Clerk is directed to send a copy of this opinion to: Dana Bostic; No. 42200-424; FCI Ashland; P.O. Box 6001; Ashland KY 41105.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 3, 2025